IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

PATRICK ROBINSON, )
 )
      Petitioner, )
 )
 ) CIV-14-548-HE
v. )
 )
ROBERT C. PATTON, Director, )
 )
      Respondent. )

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner is challenging the convictions for Murder in the First Degree (felony murder) and Conspiracy to Distribute a Controlled Dangerous Substance after three prior felony convictions entered following a jury trial conducted in the District Court of Jackson County, Case No. CF-2009-155. Respondent has responded to the Petition and filed the relevant state court records, including the transcripts of Petitioner's trial (hereinafter "TR__") and sentencing. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that the Petition be denied.

I. Background

While at a nightclub in Altus, Oklahoma on the night of May 30, 2009, Petitioner and four friends, Michelle Calvert, Dominique Lindsey, Sedrick Sanders, and Marquis Dorsey, met three Asian men, Mr. Hai Phan, Mr. Dung, and Mr. Dang. During the evening, there was

1

a discussion among Petitioner and his friends about selling drugs to the three men. There was also a discussion between Mr. Sanders and Ms. Calvert about robbing the men after Mr. Phan was seen with a large amount of money in his wallet.

At about closing time for the club, Petitioner and his friends left in Ms. Calvert's vehicle. The three Asian men had a telephone conversation with Ms. Calvert, and Petitioner and his friends then returned to the club. When they got to the club, Ms. Calvert and Ms. Lindsey moved to Mr. Dung's car. Ms. Calvert drove Mr. Dung's car, and Ms. Lindsey, Mr. Dung, Mr. Dang, and Mr. Phan were passengers in that car.

Ms. Calvert called Petitioner and asked him to meet her in the parking lot of an apartment complex in Altus to facilitate a drug purchase between Petitioner and the three Asian men. Ms. Calvert drove the three men and Ms. Lindsey to the parking lot of the apartment complex. Petitioner, Mr. Sanders, and Mr. Dorsey drove to the apartment complex in a separate car.

After pulling into a parking spot, Petitioner and Mr. Dorsey approached the passenger side of the vehicle. Mr. Phan, who remained in Mr. Dung's vehicle, was counting some money, and Ms. Calvert took the money from Mr. Phan. Petitioner was carrying a plastic bag containing drugs and asked which of the men wanted the drugs.

Mr. Sanders then approached the driver's side of the vehicle, and started yelling at the three Asian men to give him their money. Ms. Calvert and Ms. Lindsey got out of the vehicle and ran away from the vehicle. Petitioner reached into the car from the passenger side front door and attempted to get the keys out of the car's ignition. Mr. Sanders shot Mr.

2

Phan in the back and hit Mr. Dang in the head. Mr. Sanders took the three men's wallets.

After the shooting, Petitioner, Mr. Sanders, Ms. Calvert, Ms. Lindsey, and Mr. Dorsey left the area and went to a party. Police were able to identify Ms. Lindsey because that evening she had put her name and phone number into Mr. Dang's cell phone. Ms. Lindsey gave police the names of Ms. Calvert, Mr. Sanders, Mr. Dorsey, and Petitioner. Ms. Calvert and Mr. Sanders fled to Texas where Ms. Calvert was later arrested. She gave police the names of Mr. Sanders, Mr. Lindsey, and Petitioner. Petitioner's fingerprint was recovered from a key tag from Mr. Dung's vehicle.

Petitioner was arrested on June 4, 2009. A portion of a custodial interview conducted with Petitioner after his arrest was admitted into evidence and played for the jury. On June 5, 2009, Petitioner was charged by information filed in the District Court of Jackson County, Oklahoma, with the offenses of (1) murder in the first degree while in the commission of robbery with a dangerous weapon, (2) conspiracy to commit robbery with a dangerous weapon, and (3) robbery with a dangerous weapon. The information was subsequently amended to charge Petitioner with the offenses of (1) murder in the first degree while in the commission of robbery with a dangerous weapon or, alternatively, murder in the first degree while in the attempted commission of distribution of crack cocaine, and (2) conspiracy to commit robbery with a dangerous weapon or, alternatively, conspiracy to commit distribution of crack cocaine. The information charged that Petitioner committed the offenses after three prior felony convictions. Counsel was appointed by the district court to represent Petitioner.

In a four-day jury trial, Petitioner was found guilty of the offenses of murder in the

3

first degree while in the commission of distribution of crack cocaine and conspiracy to commit distribution of crack cocaine. The jury recommended sentences of life imprisonment for the murder conviction and 15 years of imprisonment for the conspiracy conviction. At a sentencing proceeding conducted on August 10, 2011, Petitioner was sentenced accordingly, with the sentences ordered to run consecutively.

With new court-appointed counsel, Petitioner appealed the convictions to the Oklahoma Court of Criminal Appeals ("OCCA"). In his appeal, Petitioner asserted as grounds for relief that (1) the evidence was not sufficient to support the first degree felony murder conviction because the prosecution did not prove a nexus between the underlying felony found by the jury and the homicide; (2) the trial court erred by failing to order and obtain a presentence investigation prior to sentencing Petitioner; and (3) his sentence, which effectively constituted a sentence of life without parole, was excessive and should be modified. Response, Ex. 1. The State responded in opposition to each of these grounds. Response, Ex. 2.

In a summary opinion issued on December 6, 2012, the OCCA addressed each of Petitioner's propositions and affirmed the convictions and sentences. With respect to the first proposition, the OCCA found that the evidence was sufficient to establish the required nexus between Petitioner's "inherently dangerous felonious conduct of attempting to distribute a controlled dangerous substance and the resulting death of the victim." Response, Ex. 4, at 2. As to Petitioner's second proposition, the OCCA found that Petitioner had failed to object to the alleged error before sentencing and he had therefore waived all but plain error. Relying

4

on previous precedent, the court found that Petitioner waived the right to a presentence investigation and there was no plain error.

With respect to Petitioner's third proposition, the court found that the issue of whether Petitioner's consecutive sentences was excessive was reviewed only for an abuse of discretion under state law. Because Petitioner was "a recidivist felon whose career in crime ha[d] culminated in a senseless murder, for which he received the minimum punishment" and his "second sentence [was] well within the statutory range," the consecutive sentences did "not shock the conscience" of the court and did not warrant relief. Id. at 3.

Approximately one year later, on December 11, 2013, Petitioner filed an application for post-conviction relief in the district court. In this application, Petitioner alleged that "selective prosecution of petitioner violated equal protection of the law clauses." Response, Ex. 5, at 5. Petitioner also alleged that his trial counsel provided constitutionally ineffective assistance by failing to raise the "selective prosecution" issue asserted in the first ground, and he alleged that his appellate counsel provided constitutionally ineffective assistance by failing to raise both the "selective prosecution" and ineffective assistance of trial counsel claims in Petitioner's direct appeal. Response, Ex. 5.

The district court found Petitioner's claim of ineffective assistance of appellate counsel was "meritless" because the omission of the underlying claims of "selective prosecution" and ineffective assistance of trial counsel were meritless and could not have prejudiced Petitioner. Response, Ex. 8.

In an order affirming denial of post-conviction relief entered March 28, 2014, the

OCCA found that judicial review of Petitioner's claims of "race-based selective prosecution" and ineffective assistance of trial counsel were waived as Petitioner procedurally defaulted the claims by failing to raise them in his direct appeal. Response, Ex. 9.

With respect to Petitioner's claim of ineffective assistance of appellate counsel, the OCCA found that Petitioner could raise this claim for the first time on post-conviction. Applying the standard established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), for reviewing claims of ineffective assistance of counsel, the OCCA held that Petitioner could not show prejudice because his underlying claims of "selective prosecution" and ineffective assistance of trial counsel were meritless. Thus, Petitioner has not shown ineffective assistance of appellate counsel, and the OCCA affirmed the district court's decision.

II. Petition

Petitioner now seeks federal habeas relief. Petitioner asserts in ground one of the Petition that "selective prosecution" of Petitioner violated his rights under the Equal Protection Clause. As support for this claim, Petitioner argues that "[t]he Caucasian prosecutors in this case with the racially discriminating purpose and intent, excluded the charging and prosecuting of the Asian offenders Mr. Dang and Mr. Dung and selectively charged, prosecuted, convicted, and punished only the Hispanic and African Americans for the [controlled dangerous substance] conspiracy and felony murder of Mr. Phan (Asian victim)."

In ground two of the Petition, Petitioner asserts that he was denied his Sixth

6

Amendment right to the effective assistance of trial counsel because his defense attorney did not assert that he was the subject of "selective prosecution" in violation of the Equal Protection Clause.

In ground three, Petitioner contends that he was denied his Sixth Amendment right to the effective assistance of appellate counsel because his appellate counsel failed to raise the issues asserted in grounds one and two of the Petition. Petitioner raised all of these claims in his post-conviction application, and the claims are therefore exhausted.[1]

III. Standard of Review of Constitutional Claims

Under the AEDPA, habeas relief may be granted with respect to a claim of a constitutional deprivation by a state prisoner that was adjudicated on its merits in state court proceedings only when the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v. Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state

---

[1] A fourth, unexhausted claim asserted in the Petition of witness-tampering was voluntarily dismissed by Petitioner.

7

court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(*per curiam*)(citations omitted). See Cullen v. Pinholster, 563 U.S. __, 131 S.Ct. 1388 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1).

IV. Procedural Default

In Petitioner's post-conviction appeal, the OCCA found that Petitioner had procedurally defaulted both his "selective prosecution" claim and his ineffective assistance of trial counsel claim. In its order affirming the district court's denial of post-conviction relief, the OCCA relied on the court's well-established procedural bar rule. See Response, Ex. 9, at 2. See Okla. Stat. tit. 22, §§ 1086, 1089; Fowler v. State, 896 P.2d 566, 569 (Okla. Crim. App. 1995).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "strictly limits a federal court's ability to consider issues on habeas review that the state court deemed

8

procedurally barred." Hammon v. Ward, 466 F.3d 919, 925 (10th Cir. 2006). "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009)(quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991), and Lee v. Kemna, 534 U.S. 362, 375 (2002)).

If a particular claim presented in a habeas petition was "defaulted in state court on an independent and adequate state procedural ground," the merits of the procedurally-defaulted claim will not be addressed in the federal habeas proceeding "unless cause and prejudice or a fundamental miscarriage of justice is shown." Johnson v. Champion, 288 F.3d 1215, 1223 (10th Cir. 2002)(internal quotation marks omitted). Accord, Smith v. Workman, 550 F.3d 1258, 1274 (10th Cir. 2008).

"To be independent, the procedural ground must be based solely on state law." Thacker v. Workman, 678 F.3d 820, 835 (10th Cir. 2012). "To be adequate, the procedural ground must be strictly or regularly followed and applied evenhandedly to all similar claims." Id. (internal quotation marks omitted).

Oklahoma's procedural bar rule for claims not raised in a direct appeal "is considered independent for purposes of federal habeas review." Cole v. Trammell, 755 F.3d 1142, 1159 (10th Cir. 2014)(internal quotation marks omitted). Oklahoma's procedural bar rule is also an adequate ground for the OCCA's decision with respect to Petitioner's "selective prosecution" claim asserted in ground one of the Petition. See Welch v. Workman, 607 F.3d

9

674, 687 n. 4 (10th Cir. 2010)("Under Oklahoma law, claims previously raised and rejected are barred by res judicata. . . . Both the res judicata bar to claims previously rejected and the waiver rule for claims not previously raised . . . are included in Okla. Stat. tit. 22, §§ 1086 and 1089, and both are regularly and even-handedly applied by the state courts.")(internal quotation marks and citation omitted).

The adequacy of OCCA's application of its procedural rule in declining to review Petitioner's ineffective assistance of trial counsel claim requires additional analysis. In Martinez v. Ryan, __ U.S. __, 132 S.Ct. 1309 (2012), the Supreme Court held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial" when the State's law provides that "claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding," such as a direct appeal, and "in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 1320.

In Trevino v. Thaler, __ U.S. __, 133 S.Ct. 1911 (2013), the Supreme Court addressed a similar issue and recognized that "the inherent nature of most ineffective assistance of trial counsel claims means that the trial court record will often fail to contain the information necessary to substantiate the claim." Id. at 1918 (internal quotation marks and brackets omitted). In that case involving state court procedures for appealing a conviction in Texas, the Court held that "where, as here, state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our

10

holding in *Martinez* applies." Id. at 1921.

The Tenth Circuit Court of Appeals has specifically addressed the issue of "whether *Trevino* applies to Oklahoma's procedures" for appeal of a claim of ineffective assistance of trial counsel. Fairchild v. Trammell, __ F.3d __, 2015 WL 1843529, *16 (10th Cir. 2015). In Fairchild, the circuit court reviewed Oklahoma's procedural rules and found that "Oklahoma provides a reasonable time to investigate a claim of ineffective assistance before raising it on direct appeal." Id. Based on these procedural rules and citing a multitude of cases in which the OCCA had reviewed the merits of ineffective assistance of counsel claims in direct appeals, the Tenth Circuit Court of Appeals held in Fairchild that the "'design and operation' of Oklahoma's procedural framework" does not "'make[ ] it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal.'" Id. at *18 (quoting Trevino, 133 S.Ct. at 1921).

Generally, "[t]he Oklahoma requirement that a claim of ineffective assistance of trial counsel be raised on direct appeal is an adequate ground for procedural default if (1) the defendant's counsel on direct appeal [wa]s different from trial counsel and (2) the claims [could have been] resolved on the trial record alone." Welch v. Workman, 639 F.3d 980, 1012 (10th Cir. 2011).

In light of the Fairchild decision, Oklahoma's procedures for appealing a claim of ineffective assistance of trial counsel do not make it highly unlikely that Petitioner would have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel in a

11

direct appeal. Thus, the holding in Martinez does not apply, and Petitioner's procedural default may bar federal habeas review of his procedurally-defaulted ineffective assistance of trial counsel claim.

Because Petitioner had different counsel on appeal and his ineffective assistance of trial counsel claim could have been resolved on the trial record alone, the OCCA's application of its procedural bar rule to deny review of his procedurally-defaulted ineffective assistance of trial counsel claim was an adequate state ground for the decision.

Under these circumstances, Petitioner must show cause for his state-court procedural default of his "selective prosecution" and ineffective assistance of trial counsel claims, and he must also show prejudice. Alternatively, Petitioner must show that a fundamental miscarriage of justice will result from this Court's application of the procedural default doctrine.

Petitioner has alleged a separate claim of ineffective assistance of appellate counsel, and it appears Petitioner is alleging that ineffective assistance of appellate counsel constitutes cause for his state-court procedural default. An independent constitutional violation of the right to effective assistance of counsel may constitute cause for a procedural default. See Murray v. Carrier, 477 U.S. 478, 446, 451-52 (1986)(holding that exhausted claim that appellate counsel provided ineffective assistance may, in some circumstances, provide cause to excuse a procedural default); Ellis v. Hargett, 302 F.3d 1182, 1186 (10th Cir. 2002)("A showing that a defendant received ineffective assistance of counsel will establish cause excusing a procedural default.").

12

The OCCA applied Strickland's two-part test in its decision in Petitioner's post-conviction appeal and found that Petitioner had not shown a denial of the Sixth Amendment's right to effective assistance of counsel on appeal. Petitioner must therefore show that the OCCA's decision conflicted with or unreasonably applied the governing Strickland standard.

Under Strickland, a litigant must show that his or her attorney's representation fell below an objective standard of reasonableness and that appellate counsel's errors prejudiced the defense. Strickland, 466 U.S. at 687. "Judicial scrutiny of the adequacy of attorney performance must be strongly deferential: '[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Blackwell, 127 F.3d 947, 955 (10th Cir. 1997)(quoting Strickland, 466 U.S. at 689). "Moreover, the reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the error." Id. Accord, Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689.

Prejudice, under the second prong, is shown by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim...to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

The Sixth Amendment "does not require an attorney to raise every nonfrivolous issue on appeal." Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995)(citing Jones v. Barnes,

463 U.S. 745, 751 (1983)). "It is completely reasonable, and in fact advisable, for appellate counsel to eliminate weak but arguable claims and pursue issues on appeal which are more likely to succeed." Jackson v. Shanks, 143 F.3d 1313, 1321 (10th Cir. 1998). If an issue that appellate counsel failed to raise has merit, the court must determine whether counsel's failure to raise the issue was deficient and prejudicial. Hawkins, 185 F.3d at 1152.

"[I]f the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance. . . ." Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003). If the omitted issue "has merit but is not so compelling . . . [the court must assess] . . . the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance." Id. See Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999)(if omitted issue is meritless, then counsel's failure to raise it on appeal is not constitutionally ineffective assistance).

Petitioner's rather odd claim underlying both his ineffective assistance of trial counsel and his ineffective assistance of appellate counsel claims is that his defense attorneys should have argued he was selectively prosecuted for the death of Mr. Phan. The argument is based on the assertion that Mr. Dung and Mr. Dang, the two remaining victims of the robbery, were co-participants in the offense of conspiracy to distribute a controlled dangerous substance.

"In the ordinary case, 'so long as the prosecutor has probable cause to believe that the

14

accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" United States v. Armstrong, 517 U.S. 456, 464 (1996)(quoting Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)). Under the Equal Protection Clause's guarantee, however, that discretion is constrained such that "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (internal quotation marks omitted).

The standard is a "demanding one," however, and the defendant who seeks to overcome the presumption that a prosecutor has not violated equal protection must present "clear evidence to the contrary." Id. at 463, 465 (internal quotation marks omitted). To show an equal protection violation, the petitioner must demonstrate that the prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 465 (internal quotation marks omitted). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." Id.

"[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." United States v. Deberry, 430 F.3d 1294, 1301 (10th Cir. 2005). In this case, Petitioner has not provided clear evidence of selective prosecution. Mr. Dung and Mr. Dang were the victims of a robbery committed by Petitioner and his co-defendants. Mr. Dung and Mr. Dang also witnessed the death of their friend, Mr.

15

Phan, committed during the robbery and also in the midst Petitioner's and his co-defendants' conspiracy to distribute a controlled substance.

There was no evidence presented at Petitioner's trial that either Mr. Dung or Mr. Dang was involved in any conspiracy to distribute any controlled substances. A criminal conspiracy requires an agreement. United States v. Jimenez Recio, 537 U.S. 270, 274 (2003)("the essence of a conspiracy is an agreement to commit an unlawful act")(internal quotation marks omitted). There was no evidence of any agreement between Petitioner and Mr. Dung or Mr. Dang to distribute a controlled substance. The evidence at trial showed that Mr. Phan handed some money to Ms. Calvert, but there was no evidence that Mr. Dung or Mr. Dang purchased or received any controlled substances.

Therefore, in light of the evidence at trial, Mr. Dung and Mr. Dang were not similarly situated to Petitioner in any respect. Moreover, Petitioner has not alleged, and there was no evidence presented at trial, that the prosecutors were motivated by a discriminatory purpose in prosecuting Petitioner.

Because Petitioner's "selective prosecution" claim is meritless, Petitioner's appellate counsel did not provide unreasonably deficient performance by failing to assert the meritless "selective prosecution" claim and the related ineffective assistance of trial counsel claim in Petitioner's direct appeal. Petitioner has not demonstrated that the OCCA's resolution of Petitioner's ineffective assistance of appellate counsel claim conflicted with or unreasonably applied the governing Strickland standard.

Petitioner has not shown cause for his state-court procedural default of his claims in

16

grounds one and two of the Petition. Nor has Petitioner demonstrated that a fundamental miscarriage of justice should apply to warrant habeas review of his defaulted claims. Consequently, Petitioner is not entitled to habeas relief.

## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by June 24th, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this 4th day of June, 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE